**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Five Points Hotel Partnership; Paragon Hotel Corporation,<br><br>        Plaintiffs,<br><br>vs.<br><br>Joe Pinsonneault; Jane Doe Pinsonneault,<br><br>        Defendants. | No. CV 11-548-PHX-JAT<br><br>**ORDER** |

Currently pending before the Court are Defendants' Motion to Dismiss (Doc. 12) and Plaintiffs' Motion to Strike (Doc. 16). The Court now rules on the Motions.

**I. BACKGROUND**

Plaintiff Five Points Hotel Partnership ("Five Points") is an Arizona general partnership that owned a Holiday Inn in Casa Grande Arizona (the "Hotel"). Plaintiff Paragon Hotel Corporation ("Paragon," collectively with Five Points, "Plaintiffs") is the managing general partner of Five Points.

In March 2005, Five Points sold the Hotel to Casa Grande Resort Living, LLC ("Casa"), an Arizona limited liability company. Defendant Joe Pinsonneault ("Defendant") is the sole manager and a member of Casa. Mr. Pinsonneault is a California real estate developer who formed Casa for the purpose of purchasing the Hotel.

Five Points and Casa agreed that Casa would purchase the hotel for $3.8 million. Pursuant to the purchase contract, Casa paid nothing at the time of the closing, but assumed

1  the Hotel's bond debt. Casa planned to immediately resell the Hotel.

2  Plaintiffs allege the parties agreed that upon resale of the Hotel and a "second
3  closing," the bond trustee and escrow company would reconcile the Hotel's bond reserve
4  accounts and specified operating accounts of the Hotel and pay Five Points any remaining
5  funds. At that time, Casa also would pay Five Points any difference between the total payoff
6  amount of the bonds and the stated purchase price of the Hotel.

7  Plaintiffs allege that Casa did not make any payments on the bond interest after
8  purchasing the Hotel. Instead, Casa and Defendant allegedly allowed the bond reserve
9  accounts that belonged to Five Points to become depleted, and made no effort to replenish
10 them. Defendant never created a bond reserve account for Casa and did not fund a checking
11 account for Casa.

12 Casa resold the Hotel to Peter Nagra in June 2005 for $6.1 million. After Five Points
13 provided the bond payoff amounts to the title agency, Five points requested the escrow
14 documents related to the re-sale, believing the re-sale to be the anticipated "second closing"
15 that would reconcile the Hotel's operating and bond reserve accounts. But the title agency
16 informed Five Points that because Five Points was not a party to the resale, Five Points
17 would not be receiving any supporting documents. The title agency refused to pay any sums
18 or provide a reconciliation of the accounts and reserves to Five Points. Defendant had the
19 resale proceeds transferred directly from the escrow account into a personal bank account,
20 bypassing Casa.

21 Because of the failure to reconcile the bond reserve and operating accounts, Five
22 Points brought suit in Arizona Superior Court against Casa, Defendant Pinsonneault, and the
23 title agency in December of 2005. The trial court granted the title agency's motion for
24 summary judgment and Defendant Pinsonneault's motion for summary judgment. After a
25 bench trial in September 2009, the state court found in favor of Five Points on its remaining
26 claims against Casa. On April 26, 2010, the state court entered a judgment in favor of
27 Plaintiffs and against Casa in the amount of $300,000 and awarded Plaintiffs $200,000 in
28 costs and attorneys fees plus pre- and post-judgment interest.

1  Plaintiffs have not been able enforce this judgment because Casa has no assets.
2 Plaintiffs therefore brought this action against Defendant Pinsonneault under an alter
3 ego/piercing the corporate veil theory to attempt to collect the outstanding judgment from
4 Defendant's personal assets.

5 **II. MOTION TO STRIKE**

6  Plaintiffs have moved pursuant to Local Rule of Civil Procedure 7.2(m)(1) to strike
7 Defendants' Reply in Support of the Motion to Dismiss.  Plaintiffs argue that the Reply
8 improperly attempts to convert Defendants' Motion to Dismiss into a motion for summary
9 judgment.  Defendants claim that because they attached documents to their Motion to
10 Dismiss, the Court must convert their Motion to a motion for summary judgment, and
11 Plaintiffs therefore must demonstrate issues of fact to survive the motion.

12  Local rules of civil procedure provide that a motion to strike may be filed only if it
13 is authorized by statute or rule, such as Rules 12(f), 26(g)(2) or 37(b)(2)(A)(iii), or if it seeks
14 to strike any part of a filing or submission on the ground that it is prohibited by a statute, rule,
15 or court order.  L.R.Civ.P. 7.2(m)(1).  Plaintiffs have not identified which statute or rule
16 authorizes their Motion to Strike.  Nor have Plaintiffs demonstrated that a statute, rule, or
17 court order prohibits all or part of Defendants' Reply.

18  Plaintiffs' take issue with Defendants' attempts to unilaterally convert their motion
19 to a motion for summary judgment.  And, as set out below, the Court finds Defendants'
20 attempts unavailing.  But that does not mean that the Court should strike the Reply.  Because
21 Plaintiffs have not articulated a proper legal basis, the Court will deny the Motion to Strike
22 the Reply.

23 **III. MOTION TO DISMISS**

24  As both Plaintiffs and Defendants have indicated, Defendants attached exhibits to
25 their Reply. Defendants have attached: 1) the February 2011 Memorandum decision from
26 the Arizona Court of Appeals affirming the trial court in the earlier state action; 2) the
27 transcript of Mr. Rhead's testimony from the underlying state bench trial; and 3) the First
28 Amended Complaint from the earlier state court action.

1    The Court generally cannot consider material beyond the complaint in ruling on a Rule 12(b)(6) motion to dismiss. *Intri-Plex Tech., Inc. v. The Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). The Court can, however, take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Id.* But the Court cannot take judicial notice of disputed facts stated in public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). The Court can take judicial notice of another court's opinion "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id.* at 690 (internal citations omitted).

So, the Court can take judicial notice of the Arizona Court of Appeals decision attached to the Motion to Dismiss for the fact of its existence, the parties to the state case, and the result of the disposition, but not for the truth of the facts therein, without converting the Motion to a motion for summary judgment. The Court can also take judicial notice of the attached First Amended Complaint from the state case, without taking judicial notice of the disputed facts within the First Amended Complaint. The Court cannot take judicial notice of the contents of Mr. Rhead's testimony.

The Court will take judicial notice of the attached documents because they are matters of public record, but will not take judicial notice of any disputed facts found in the documents. The Court will disregard the attached documents to the extent Defendants cite them for any disputed issues of fact. The Court therefore will not convert the Motion to Dismiss into a motion for summary judgment.

Defendants are free, as they have threatened, to immediately file a motion for summary judgment because the Court will not consider disputed facts when deciding the pending Motion to Dismiss. But Plaintiffs correctly point out that they can move for discovery pursuant to Rule 56(d) in lieu of responding to the merits of the motion. The Court further notes that it allows parties to file only one motion for summary judgment.

**A. LEGAL STANDARD**

The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## B. ANALYSIS AND CONCLUSION

Defendants argue that Plaintiffs have failed to allege facts sufficient to state a claim for piercing the corporate veil/alter ego; that Plaintiffs' claims are barred by res judicata; and that Plaintiffs' claims are barred by the statute of limitations.

### 1. Failure to State a Claim

In general, a corporation is treated as a separate entity, and the personal assets of a corporate officer may not be reached to satisfy corporate liabilities. *Loiselle v. Cosas Mgmt. Group, LLC*, 228 P.3d 943, 950 (Ariz. Ct. App. 2010). But courts will disregard the corporate entity and pierce the corporate veil if there is sufficient evidence that: 1) the corporation is actually the alter ego of one or a few individuals and 2) observance of the corporate's separate legal status would sanction a fraud or promote injustice. *Employer's Liab. Assurance Corp. v. Lunt*, 313 P.2d 393, 395 (Ariz. 1957). "The disregard of the corporate fiction has not been [limited] to instances where the incorporation is for fraudulent purposes, but may be observed if after organization the corporation is employed for fraudulent purposes." *Id.* at 396.

To survive a 12(b)(6) motion to dismiss, Plaintiffs must allege facts sufficient to raise a right to relief above a speculative level. *Twombly*, 550 U.S. at 555 (internal citations omitted). Plaintiffs' claims to relief must be plausible on their face. *Iqbal*, 129 S.Ct. at 1949.

1  Plaintiffs have alleged that: Defendant is Casa's only known manager and owner;
2 Defendant created and ran Casa as his own personal asset; Defendant undercapitalized Casa
3 to fulfill its intended purpose; Casa did not have a checking account; Defendant never created
4 any bond reserve accounts for Casa; Defendant had the Hotel resale proceeds transferred
5 directly from the escrow account into a personal bank account, bypassing the Casa corporate
6 form; Because Casa received no funds in a corporate account from the resale, it could not pay
7 the money it owed to Five Points under the Agreement of Asset Purchase; and Defendant
8 paid for Casa's legal defense in the underlying state action from his own personal funds.
9 Assuming all the foregoing facts are true, as the Court must when deciding a motion to
10 dismiss, the Court finds that Plaintiffs have alleged facts sufficient to state a plausible claim
11 for piercing the corporate veil/alter ego.

12  Defendants mention in their Reply that "an action to pierce the corporate veil is . . .
13 not a separate claim." (Doc. 15 p.6.) But Defendants do not urge this as a basis for
14 dismissing the case.

15  Some states treat veil piercing/alter ego as an equitable remedy, not a separate cause
16 of action. *See e.g., Forever Green Athletic Fields, Inc. v. Lasiter Constr.*, - - - S.W.3d - - -,
17 2011 WL 1784350 *19 (Ark. Ct. App. May 11, 2011)("The doctrine of piercing the corporate
18 veil is an equitable remedy; it is not itself a cause of action; rather, it is a means of imposing
19 liability on an underlying cause of action, such as a tort or breach of contract."). Other states
20 recognize the alter ego theory as a separate and distinct claim. *See, e.g., Saidawi v.
21 Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 504 (Mo. App. E.D. 1999)("The alter ego
22 theory is a separate and distinct cause of action under Missouri law.").

23  The Court could not find an Arizona case[1] specifically addressing whether an alter ego
24 claim is a separate and distinct cause of action that can stand alone. Dicta from some
25 Arizona cases indicates that a party can bring a separate alter ego claim. *See Chaplin v.*

---

[1]Because the Court is sitting in diversity, the Court applies the substantive law of the forum state, Arizona. *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 755 (9th Cir. 2010).

- 7 -

*Snyder*, 207 P.3d 666, 670 (Ariz. Ct. App. 2008)("The trial court, however, allowed Reliance to take its claims of fraud and alter-ego to a jury. Ultimately, Reliance did not request a jury instruction for its alter-ego *claim*.")(emphasis added); *GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 795 P.2d 827, 835 (Ariz. Ct. App. 1990)("In the case before us, the complaint contained four counts . . . Count I alleged that [] was responsible for the debt owed by [] and [] pursuant to an alter ego theory of liability . . . Clearly, the breach of contract claim requires proof of different facts than would be required for the fraud, racketeering, and alter ego claims.").

Defendants have not argued for dismissal of the case because an alter ego claim theory is not a separate and distinct claim. For the purpose of deciding the pending Motion, the Court therefore will assume that Arizona recognizes the alter ego theory as a claim that can stand alone.

### 2. Res Judicata

Defendants argue that Plaintiffs' alter ego claim is barred by the doctrine of *res judicata*, or claim preclusion, because Plaintiffs sued Defendant for fraud in the underlying state action. Defendants do not contend that Plaintiffs' alter ego claim was actually decided in the underlying action and therefore barred by issue preclusion.

To determine the preclusive effect of a state court judgment, the Court looks to state law. *Intri-Plex Tech.*, 499 F.3d at 1052. "Under Arizona law, a claim is barred by res judicata if a court previously issued a final judgment on the merits involving the same cause of action with the same parties." *Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986). Arizona uses the "same evidence" test for determining whether an action is the same cause of action for res judicata purposes. *Phoenix Newspapers, Inc. v. Dep't of Corrections, State of Arizona*, 934 P.2d 801, 804 (Ariz. Ct. App. 1997). Under the "same evidence" test, "If no additional evidence is needed to prevail in the second action than that needed in the first, then the section action is barred." *Id*.

Plaintiffs do not dispute the existence of a final judgment and that the parties here

- 8 -

were a party to that judgment.[2] The Court therefore only needs to determine whether the pending case is the same case for res judicata purposes.

Plaintiffs made fraud allegations against Defendant in the underlying action. Plaintiffs alleged in state court that Defendant made certain fraudulent misrepresentations regarding his intentions to pay certain moneys under the purchase agreement. But Plaintiffs did not assert an alter ego claim below, and the state court did not reach that issue.

Under the "same evidence" test, the Court must decide whether Plaintiffs' alter ego claim here would require different evidence from their fraud allegations in state court. The Court finds that Plaintiffs' alter ego claim does require additional, different evidence. Plaintiffs must introduce evidence in this case that Casa is merely the business conduit of Defendant. But Plaintiffs did not need to introduce any evidence regarding the relationship between Defendant and Casa to prevail on their fraud claims below. Because Plaintiffs' alter ego claim requires additional evidence, the Court finds that their claim is not barred by res judicata. *See Rousselle v. Jewett*, 421 P.2d 529, 531 (Ariz. 1966)("Rights, claims, or demands – even though they grow out of the same subject matter – which constitute separate or distinct causes of action not appearing in the former litigation, are not barred in the later action because of res judicata.").

### 3. Statute of Limitations

Defendants argue that Plaintiffs' alter ego claim is "(at most) governed by the 'general' limitations period set forth in A.R.S. §12-550," which provides a four year limitation for all actions other than recovery of real property for which no limitation is otherwise prescribed. (Doc. 12 p.13.) Defendants further argue that the claim accrued in 2005 at the time of the second closing or resale. Defendants therefore contend that the statute of limitation ran on Plaintiffs' claim in 2009, at the latest.

A party can raise a statute of limitations defense if it appears from the face of the

---

[2]The state court entered summary judgment in favor of Defendant on all of Plaintiffs' claims against him.

- 9 -

1  complaint that the claim is barred. *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998). But the
2  defense is not favored in Arizona, and courts will not resolve statute of limitations issues
3  based on disputed facts. *Id.*

4  Generally, a claim does not accrue and the statute of limitations does not begin to run
5  until a plaintiff discovers or by the exercise of reasonable diligence should discover that the
6  claim exists. *Anson v. Am. Motors Corp.*, 747 P.2d 581, 584 (Ariz. Ct. App. 1987). A
7  plaintiff does not need to know all the facts underlying a claim to trigger accrual, but the
8  plaintiff must possess at least a minimum requisite amount of knowledge to recognize that
9  a wrong occurred and caused injury. *Doe*, 955 P.2d at 961. "When discovery occurs and a
10 cause of action accrues are usually and necessarily questions of fact for the jury." *Id.*

11 Defendants claim that the general four-year statute of limitations applies to an alter
12 ego claim. The Court could not find an Arizona case that addresses which statute of
13 limitation applies to alter ego claims. But the Court finds persuasive opinions from other
14 states finding that the limitation for enforcing judgments applies to subsequent, stand-alone
15 alter ego causes of action. *See, e.g., Norwood Group, Inc. v. Phillips*, 828 A.2d 300, 302
16 (N.H. 2003)(holding that where a party first obtains a judgment against a corporation and
17 later sues corporate stockholders to cast them in judgment under the doctrine of piercing the
18 corporate veil, the suit against the stockholders is an action on a judgment and is governed
19 by the twenty-year statute of limitations for actions to enforce a judgment.); *cf Matthews*
20 *Constr. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990)(holding that once the plaintiff filed
21 suit against the corporation, the limitations period was tolled as to the corporation's alter ego
22 until final judgment against the corporation).

23 The general statute limiting the time within which a judgment must be enforced allows
24 a judgment creditor to collect on the judgment within five years after entry of the judgment.
25 *In re Smith*, 101 P.3d 637, 639 (Ariz. 2004)(citing A.R.S. §12-1551(A)). A.R.S. §12-
26 1551(A) provides, "The party in whose favor a judgment is given, at any time within five
27 years after entry of the judgment and within five years after any renewal of the judgment
28 either by affidavit or by an action brought on it, may have a writ of execution or other

process issued for its enforcement."

The Court finds that an Arizona court would likely apply this five-year statute of limitation to enforce a judgment to Plaintiffs' alter ego claim. Because judgment did not enter on the underlying state cause until April of 2010, Plaintiffs' claim falls well within the five-year period.

But even if the Court were to apply the general four-year limitation to the claim as urged by Defendants, the Court would not grant the motion to dismiss. "The trial court should not grant a motion to dismiss unless it appears certain plaintiff will not be entitled to relief under any set of facts susceptible of proof under the claims stated." *Anson*, 747 P.2d at 582. The Court cannot determine with certainty from the face of the pending Amended Complaint that Plaintiffs' alter ego claim accrued back in 2005. The Court finds that when Plaintiffs discovered or should have discovered that Casa was merely an alter ego of Defendant is a question of fact that the Court cannot resolve on a motion to dimiss.

The Court will deny the motion to dismiss Plaintiffs' claim on statute of limitations grounds because the Court finds that A.R.S. §12-1551 (A) is the applicable statute of limitations and that the statute did not begin to run until judgment against Casa was entered. Alternatively, the Court denies the motion to dismiss on statute of limitations grounds because it is not clear from the face of the Amended Complaint when the alter ego claim accrued.

Accordingly,

**IT IS ORDERED DENYING** Plaintiffs' Motion to Strike (Doc. 16).

**IT IS FURTHER ORDERED DENYING** Defendants' Motion to Dismiss (Doc. 12).

DATED this 12th day of December, 2011.

James A. Teilborg
United States District Judge