**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Five Points Hotel Partnership; Paragon Hotel Corporation,<br><br>  Plaintiffs,<br><br>v.<br><br>Joe Pinsonneault, et al.,<br><br>  Defendants. | No. CV-11-00548-PHX-JAT<br><br>**ORDER** |

Currently pending before the Court are Defendant Joe Pinsonneault's Motion for Summary Judgment (Doc. 49) and Plaintiffs Five Points Hotel Partnership and Paragon Hotel Corporation's Motion for Summary Judgment (Doc. 51).

**I.    BACKGROUND**

The Court has previously summarized the factual and procedural background of this case:

> Plaintiff Five Points Hotel Partnership ("Five Points") is an Arizona general partnership that owned a Holiday Inn in Casa Grande Arizona (the "Hotel"). Plaintiff Paragon Hotel Corporation ("Paragon," collectively with Five Points, "Plaintiffs") is the managing general partner of Five Points.
> 
> In March 2005, Five Points sold the Hotel to Casa Grande Resort Living, LLC ("Casa"), an Arizona limited liability company. Defendant Joe Pinsonneault ("Defendant") is the sole manager and a member of Casa. Mr. Pinsonneault is a California real estate developer who formed Casa for the purpose of purchasing the Hotel.
> 
> Five Points and Casa agreed that Casa would purchase the hotel for $3.8 million. Pursuant to the purchase contract, Casa paid nothing at the time of the closing, but assumed the

>Hotel's bond debt. Casa planned to immediately resell the Hotel.

*Five Points Hotel P'ship v. Pinsonneault*, 835 F. Supp. 2d 753, 755 (D. Ariz. 2011). Plaintiffs and Defendant agree that after the resale took place and the bond debt was paid off, a "second closing" would take place. (Doc. 58 ¶ 14; Doc. 60 ¶ 38). However, the Parties disagree as to who was owed compensation at the second closing, and each contends the other owed them money. (Doc. 58 ¶ 22; Doc. 60 ¶ 38). The Court continued:

>Casa resold the Hotel to Peter Nagra in June 2005 for $6.1 million. After Five Points provided the bond payoff amounts to the title agency, Five points[sic] requested the escrow documents related to the re-sale, believing the re-sale to be the anticipated "second closing" that would reconcile the Hotel's operating and bond reserve accounts. But the title agency informed Five Points that because Five Points was not a party to the resale, Five Points would not be receiving any supporting documents. The title agency refused to pay any sums or provide a reconciliation of the accounts and reserves to Five Points. Defendant had the resale proceeds transferred directly from the escrow account into a personal bank account, bypassing Casa.
>
>Because of the failure to reconcile the bond reserve and operating accounts, Five Points brought suit in Arizona Superior Court against Casa, Defendant Pinsonneault, and the title agency in December of 2005. The trial court granted the title agency's motion for summary judgment and Defendant Pinsonneault's motion for summary judgment [on fraud and negligent misrepresentation claims]. After a bench trial in September 2009, the state court found in favor of Five Points on its remaining claims against Casa [and affirmed the trial court grant of summary judgment for Defendant Pinsonneault]. On April 26, 2010, the state court entered a judgment in favor of Plaintiffs and against Casa in the amount of $300,000 and awarded Plaintiffs $200,000 in costs and attorneys[sic] fees plus pre- and post-judgment interest.

*Pinsonneault*, 835 F. Supp. 2d at 755–56. After being unable to collect on the judgment, Plaintiffs filed an alter ego claim in this Court. (Doc. 1 at 8). Defendant filed a motion to dismiss the case (Doc. 12), and the Court denied that motion. (Doc. 19 at 11). In denying the motion to dismiss, the Court noted that Defendant did not argue that the case should be dismissed because alter ego was not an independent cause of action. (Doc.

19 at 8). Defendant now asserts this argument, and both parties have moved for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

### III. MOTIONS FOR SUMMARY JUDGMENT

Defendant now argues that Plaintiffs fail to state a cause of action because alter ego (piercing the corporate veil) is a remedy and not an independent cause of action. (Doc. 49 at 6). Plaintiffs argue alter ego is an independent cause of action, and that the Court "already determined that an alter-ego claim is a stand-alone claim." (Doc. 51 at 7; Doc. 62 at 9). However, in its previous Order the Court did not rule on whether Arizona law allows an alter ego claim as an independent right of action. (Doc. 19 at 8). Rather, the Court "*assume[d]* that Arizona recognizes the alter ego theory" as an independent claim of action for the limited purposes of deciding that motion. (Doc. 19 at 8) (emphasis added). The Court now addresses whether an alter ego claim is an independent cause of action.

The Court has not found an Arizona Supreme Court case that specifically addresses "whether an alter ego claim is a separate and distinct cause of action that can stand alone." (Doc. 19 at 7). The Court must therefore "predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (citation omitted). Because the Court cannot find, and Plaintiffs have failed to point out, an Arizona appellate court decision that directly addresses whether an alter ego claim is a separate and distinct cause of action, the Court looks to federal district and state court decisions for guidance.

At least two Arizona district courts have addressed the issue and concluded that alter ego is not an independent claim. In *In re Elegant Custom Homes, Inc.*, the Arizona district court affirmed a bankruptcy court decision that held an insolvent corporation's veil could be pierced. *In re Elegant Custom Homes, Inc.*, 2007 WL 1412456, at *6 (D. Ariz. May 14, 2007)*, aff'd sub nom. Dusharm v. Elegant Custom Homes, Inc.*, 302 F. App'x 571 (9th Cir. 2008). In affirming veil-piercing in the bankruptcy action, the district court noted that although "[a]ppellants characterize veil piercing as a distinct cause of action . . . the doctrine is not a cause of action in itself. Rather, it is a means to vindicate

the interests of parties injured through a breach of contract or a tort." *Id.* at \*5; *see also Lindquist v. Farmers Ins. Co. of Ariz.*, 2008 WL 343299, at \*10 (D. Ariz. Feb. 6, 2008) ("[a] request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself") (citation omitted).

Of those that have considered the issue, the majority of state courts have found an alter ego claim does not constitute an independent action. Courts in Arkansas, California, Colorado, Florida, New York, Tennessee, Texas, and Utah have noted alter ego is not an independent claim, but rather a theory of liability, procedure, or equity to enforce another substantive claim. *See Forever Green Athletic Fields, Inc. v. Lasiter Constr., Inc.*, 384 S.W.3d 540, 553 (Ark. Ct. App. 2011); *Leek v. Cooper*, 125 Cal. Rptr. 3d 56, 71 (Ct. App. 2011); *Swinerton Builders v. Nassi*, 272 P.3d 1174, 1177–78 (Colo. Ct. App. 2012); *Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So. 2d 1242, 1245 (Fla. Dist. Ct. App. 1995); *Morris v. N.Y. State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993); *Boles v. Nat'l Dev. Co.*, 175 S.W.3d 226, 251 (Tenn. Ct. App. 2005); *Matthews Constr. Co., Inc. v. Rosen*, 796 S.W.2d 692, 693 n.1 (Tex. 1990); *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 634 n.1 (Utah 2012). As the Court noted in its previous Order (Doc. 19 at 7), Missouri expressly recognizes an alter ego theory as a separate and independent claim. *See Saidawi v. Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 504 (Mo. Ct. App. 1999). However, the Court is not aware of any other jurisdiction that recognizes alter ego claim as an independent claim. Overwhelmingly, cases addressing this issue have concluded an alter ego claim is not an independent right of action.[1]

Plaintiffs have not cited any Arizona cases that directly recognize an alter ego claim as an independent right of action. Rather, Plaintiffs rely upon cases where alter ego claims were brought in conjunction with fraud. (Doc. 51 at 7) (citing *Chalpin v. Snyder,*

---

[1] Similarly, federal courts applying Illinois, Connecticut, Pennsylvania, and Virginia state law have noted that an alter ego claim is not an independent cause of action. *See Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.,* 356 F.3d 731, 735–36 (7th Cir. 2004); *Everspeed Enters. Ltd. v. Skaarup Shipping Int'l,* 754 F. Supp. 2d 395, 404 (D. Conn. 2010); *Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 643 F. Supp. 2d 675, 694 (E.D. Pa. 2009); *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 111 F. Supp. 2d 734, 742 (E.D. Va. 2000).

1   207 P.3d 666, 670 (Ariz. Ct. App. 2008) ("The trial court, however, allowed Reliance to
2   take its claims of fraud and alter ego to a jury . . . ."); *GM Dev. Corp. v. Cmty. Am.*
3   *Mortg. Corp.*, 795 P.2d 827, 835 (Ariz. Ct. App. 1990) ("Clearly, the breach of contract
4   claim requires proof of different facts than would be required for the fraud, racketeering,
5   and alter ego claims.")).

6   Plaintiffs also point to *Phoenix Van Buren Partners, LLC v. Moulding &*
7   *Millwork, Inc.*, 2012 WL 1190842 (D. Ariz. Apr. 10, 2012) in support of their argument
8   that Arizona recognizes an individual alter ego claim. (Doc. 51 at 7). In that case,
9   Phoenix Van Buren Partners obtained a judgment in state court against Smith Moulding
10  Co. 2012 WL 1190842, at *4. Plaintiffs then filed suit in federal court against Smith's
11  parent company Moulding & Millwork, Inc., arguing an alter ego claim. *Id.* The court
12  granted summary judgment for the plaintiffs and allowed the corporate veil to be pierced
13  in order to enforce the underlying state judgment. *Id.* at *11. In so holding, the court
14  granted judgment in favor of Phoenix Van Buren Partners for the amount awarded in the
15  underlying state court judgment. *Id.*

16  Two problems undermine the persuasiveness of *Phoenix Van Buren Partners* with
17  respect to the present case. First, the court in *Phoenix Van Buren Partners* did not
18  squarely address whether alter ego was an independent claim under Arizona law; it
19  merely concluded that success on that claim obviated the need to consider the plaintiff's
20  three other theories of liability. *Id.* at *4, *11. Second, the plaintiff in that case sought
21  only to enforce the underlying judgment against Moulding & Millwork. *Id.* at *4.

22  Here, Plaintiffs did not seek in their complaint to merely enforce their judgment
23  against Defendants. Instead, Plaintiffs alleged a claim for alter ego and asked for
24  judgment against Joe Pinsonneault for "compensatory and/or restitutionary damages . . .
25  in an amount to be determined at trial which shall be not less than $775,000.00," plus
26  punitive damages and pre- and post-judgment interest. (Doc. 11 at 11-12). Plaintiffs have
27  consistently argued that alter ego is "a stand-alone claim." (Doc. 51 at 7). But as the
28  Court has discussed, "[n]umerous courts have held that an action to pierce the corporate

1 veil is not a separate and independent cause of action, but rather is merely a procedure to enforce an underlying judgment." *Swinerton Builders*, 272 P.3d at 1171 (holding that an action to pierce the corporate veil "was a procedural mechanism" to enforce an arbitration award against the corporation's president).

At oral argument, Plaintiffs argued for the first time that the purpose of their action is to enforce their judgment against Defendants and at the time of the state court action, Plaintiffs could not have brought an alter ego claim because they had yet to develop a good-faith basis for believing that Pinsonneault was the alter ego of Casa. But alter ego is not an independent cause of action, and Plaintiffs' request for a jury trial as to damages, including punitive damages, in excess of the judgment amount for alter ego liability is in the nature of an independent cause of action.

Because Plaintiffs pleaded alter ego as an independent cause of action and the Court concludes that Arizona law does not recognize alter ego as an independent cause of action, Plaintiffs have failed to state a claim for which the Court can impose liability.

## IV.    CONCLUSION

Accordingly, because the Plaintiffs' sole claim is for alter ego liability and that this is not an independent claim, Plaintiffs have no theory of liability and Defendant is entitled to judgment as a matter of law.[2]

//
//
//
//
//
//
//
//

---

[2] Because the Court finds Plaintiffs' sole claim does not stand as a separate and independent right of action, the Court does not need to consider whether Plaintiffs' claim is barred by *res judicata* or whether Defendant Pinsonneault is the alter ego of Casa.

For the foregoing reasons,

**IT IS ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 49), and denying Plaintiffs' Motion for Summary Judgment (Doc. 51).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment for Defendants and terminate the case.

Dated this 1st day of May, 2014.

_____
James A. Teilborg
Senior United States District Judge